576 F.2d 39
 Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor, Amicus
Curiae-Appellant,
National Education Association, Inc., Plaintiff-Intervenor,
v.
TUSCALOOSA CITY SCHOOL SYSTEM, Defendant-Appellee.
 No. 76-3644.
 United States Court of Appeals,
Fifth Circuit.
 June 19, 1978.
 
 Wayman G. Sherrer, U. S. Atty., Caryl P. Privett, Asst. U. S. Atty., Birmingham, Ala., Thomas M. Keeling, Ed. Section, John C. Hoyle, Atty., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-intervenor, amicus curiae-appellant.
 Sam M. Phelps, Tuscaloosa, Ala., for defendant-appellee.
 Gray, Seay, & Langford, Montgomery, Ala., Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, NAACP Legal Defense & Educational Fund, New York City, U. W. Clemon, Birmingham, Ala., William J. Baxley, Atty. Gen., Montgomery, Ala., for State officials.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before AINSWORTH, GODBOLD and HILL, Circuit Judges.
 PER CURIAM:
 
 
 1
 In Lee v. Macon Cty. Bd. of Educ., 5 Cir., 1970, 429 F.2d 1218, this court affirmed a desegregation order for the school system of Tuscaloosa, Alabama. Plaintiffs now seek supplemental relief, contending that Tuscaloosa's schools have not been fully desegregated. The district court granted supplemental relief concerning faculty desegregation pursuant to Singleton v. Jackson Municipal Separate School Dist., 5 Cir. (en banc), 1970, 419 F.2d 1211. The defendant was also ordered to supply free transportation for students electing the majority to minority transfer plan. But relief for allegedly unconstitutional pupil assignment was denied, and plaintiffs appeal. We vacate and remand.
 
 
 2
 The central problem in this case is that two high schools, two junior highs, and several elementary schools have remained racially identifiable since the implementation of the 1970 desegregation plan. Attendance in the system as a whole is approximately evenly divided between white and black students. Tuscaloosa's schools have operated in conformity with a neighborhood assignment plan since the entry of the 1970 desegregation order. Plaintiffs' challenge to the constitutionality of Tuscaloosa's school system is in effect an attack on the adequacy of the 1970 order as a means of eradicating the dual school system. The adequacy of the 1970 order must be evaluated in light of the current understanding in this Circuit of school desegregation law. See Dandridge v. Jefferson Parish School Bd., 5 Cir., 456 F.2d 552, 554, cert. denied, 409 U.S. 978, 93 S.Ct. 306, 34 L.Ed.2d 240 (1972). Thus, the issue is whether a unitary system was ever achieved. The racial composition of Tuscaloosa's schools are not the result of demographic changes subsequent to implementation of the desegregation order, see Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976), but have existed since the implementation of the 1970 order.
 
 
 3
 The companion case to the original desegregation of Tuscaloosa's schools involved the school system of Anniston, Alabama, see Lee v. Macon Cty. Bd. of Educ. (Anniston & Tuscaloosa), 5 Cir., 1970, 429 F.2d 1218. Anniston is an example of a post-Swann[1] modification of a neighborhood assignment plan. The Anniston school board and the plaintiffs agreed on a modification of the neighborhood assignment plan, and the new plan, "provid(ing) for much more integration of the school system," was approved in Lee v. Macon Cty. Bd. of Educ. (Anniston), 5 Cir., 1973, 483 F.2d 244, 245.
 
 
 4
 An examination of the racial composition of Tuscaloosa's schools reveals that several of the schools are racially identifiable.[2] Tuscaloosa and Druid high schools are 1.8 miles apart, yet Druid is virtually all black. The situation in the junior highs and elementary schools is less extreme, but virtually one-race schools still exist in the system. Such an incidence of racially identifiable schools is inconsistent with the achievement of unitary status. See Lee v. Demopolis City School System, 5 Cir., 1977, 557 F.2d 1053.
 
 
 5
 Vacating the district court's denial of supplemental relief and remanding for further proceedings does not indicate approval by us of the "Burford plan" presented by the plaintiffs. However, the district judge must carefully fashion a remedy that is designed to alleviate the condition of racially identifiable schools in Tuscaloosa. The school board's constitutional duty is to cure the continuing effects of the dual school system, not to achieve an ideal racial balance. See Dayton Bd. of Educ. v. Brinkman, 433 U.S. 406, 419-20, 97 S.Ct. 2766, 2775, 53 L.Ed.2d 851 (1977); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 24, 91 S.Ct. 1267, 1280, 28 L.Ed.2d 554 (1971).[3]
 
 
 6
 On remand, this matter should be expedited. The parties and the court are directed to see to the implementation of a desegregation plan at the earliest practicable time.
 
 
 7
 VACATED AND REMANDED.
 
 
 
 [1]
 Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971)
 
 
 [2]
 The record indicates the white-black pupil enrollment as follows:
 Elementary 1970 71 1975 76
Schools W B T W B T
--------------------------------------- -------------------
Alberta 329 72 401 245 57 302
--------------------------------------- -------------------
Arcadia 418 0 418 364 32 396
--------------------------------------- -------------------
Central 29 271 600 17 391 408
--------------------------------------- -------------------
East End 166 83 249 110 80 190
--------------------------------------- -------------------
Northington 507 65 572 410 45 455
--------------------------------------- -------------------
Oakdale 150 83 233 116 53 169
--------------------------------------- -------------------
Parkview 51 168 219 71 136 207
--------------------------------------- -------------------
Skyland 679 5 684 498 42 540
--------------------------------------- -------------------
Stafford 85 104 189 75 93 168
--------------------------------------- -------------------
Stillman
Heights 30 367 397 7 400 407
--------------------------------------- -------------------
32nd
Avenue 19 757 776 0 707 707
--------------------------------------- -------------------
20th
St. 0 547 547 0 438 438
--------------------------------------- -------------------
University
Place 365 30 395 331 27 358
--------------------------------------- -------------------
Verner 267 132 399 244 87 331
--------------------------------------- -------------------
Woodland
Forrest new school opened 1974 277 1 278
--------------------------------------- -------------------
Junior
High
Schools
-----------
Eastwood
Jr. High 1069 147 1219 1021 139 1160
--------------------------------------- -------------------
Tuscaloosa
Jr. High 559 534 1093 319 439 758
--------------------------------------- -------------------
Westlawn
Jr. High 139 1016 1155 92 889 981
--------------------------------------- -------------------
High
Schools
-----------
Druid
High 29 948 977 10 997 1007
--------------------------------------- -------------------
Tuscaloosa
High 1736 248 1984 1463 322 1785
--------------------------------------- -------------------
 After this case was argued, we received the attendance figures for the first week of the 1977-78 school term. Those figures indicate that the percentage of black students in the Tuscaloosa system has generally increased, but that the racially identifiable character of several schools has not been eliminated.
 
 
 [3]
 For a discussion of tailoring the remedy to the constitutional violation, see generally Kanner, From Denver to Dayton: The Development of a Theory of Equal Protection Remedies, 72 Nw.L.Rev. 382 (1977)